IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Propel PEO, Inc., Propel HR, Inc., Propel Holding Company, Inc., and Lee C. Yarborough, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 6:19-3546-HMH |
| vs. | ) ) | **OPINION & ORDER** |
| Sean Eric Roach, Idea Catapult, LLC, and Angela Morris, f/k/a Angela Renea Tyler, | ) ) ) ) | |
| Defendants. | ) ) | |
| Sean Eric Roach, | ) ) | |
| Counter Claimant, | ) ) | |
| v. | ) ) | |
| Propel HR, Inc., Lee C. Yarborough, Braxton M. Cutchin, III, and Paul L. Garrigan, Jr., | ) ) ) ) | |
| Counter Defendants. | ) | |

This matter is before the court on a motion filed by Propel HR, Inc. ("Propel HR"), Lee C. Yarborough ("Yarborough"), Braxton M. Cutchin, III ("Cutchin"), and Paul M. Garrigan, Jr. ("Garrigan") (collectively, "Movants") to dismiss or stay Defendant Sean Eric Roach's ("Roach") counterclaims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the court grants in part and denies in part Movants' motion.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Yarborough is the President and one of the principal owners of Propel Holding Company, Inc., which owns Propel PEO, Inc. and Propel HR, Inc. (collectively, "Propel"). (Am. Compl. ¶ 26, ECF No. 25); (Pls. Resp. 2, ECF No. 64.) Propel Holding Company, Inc., is the owner of the federally registered trademark "Propel HR®." (Am. Compl. ¶ 26, ECF No. 25, & Ex. 19 (License Agreement), ECF No. 25-19.) Pursuant to a license agreement, Propel PEO and Propel HR obtained certain rights in the trademark. (Id. Ex. 19 (License Agreement), ECF No. 25-19.) Propel HR's "mission is to provide valuable human resources outsourcing solutions through client-focused partnerships." (Id. at ¶ 24, ECF No. 25.)

In 2018, Plaintiffs[1] entered into a consulting relationship with Roach. On October 29, 2018, Roach, as Chief Executive Officer of Defendant Idea Catapult, LLC, ("Catapult") entered into a confidentiality and non-disclosure agreement with Propel ("Roach Confidentiality Agreement"). (Id. Ex. 2 (Roach Confidentiality Agreement), ECF No. 25-2.) On November 1, 2018, Roach, individually, and Catapult entered into an independent contractor agreement with Propel ("Roach IC Agreement.")[2] (Id. Ex. 3 (Roach IC Agreement), ECF No. 25-3.) On January 31, 2019, Defendant Angela Morris ("Morris"), then an employee of Propel HR,

---

[1] Plaintiffs in the instant case are Propel PEO, Inc., Propel HR, Propel Holding Company, Inc., and Yarborough (collectively, "Plaintiffs.")

[2] The terms of the Roach Confidentiality Agreement remain in effect for five years. (Am Compl. Ex. 2 (Roach Confidentiality Agreement 2), ECF No. 25-2.) The Roach IC Agreement includes a non-solicitation of clients provision which remains in effect for 12 months following the termination of the agreement. (Id. Ex. 3 (Roach IC Agreement 2), ECF No. 25-3.) Collectively, these agreements are referred to as the "Roach Agreements."

2

entered into a confidentiality and non-solicitation agreement with Propel ("Morris Agreement").³  (Am. Compl. Ex. 17 (Morris Agreement), ECF No. 25-17.)

Plaintiffs allege that on May 13, 2019, Propel terminated the Roach Agreements "for good cause."  (Id. at ¶ 53, ECF No. 25.)  Plaintiffs allege Roach then sent threatening messages to Propel executive team members and current and former employees.  (Id. at ¶¶ 54-55, ECF No. 25.)  Plaintiffs further allege Roach accessed Propel's security cameras and informed Propel HR employees that he was watching Yarborough and others in the Propel HR office.  (Id. at ¶¶ 55, 66-70, ECF No. 25.)  Plaintiffs notified the Greenville, South Carolina Police Department and a detective advised Roach not to contact Yarborough or anyone from Propel.  (Id. at ¶¶ 71-72, ECF No. 25.)  Further, outside counsel for Propel mailed a cease and desist letter to Roach dated June 18, 2019.  (Am. Compl. Ex. 4 (Letter), ECF No. 25-4.)

In June 2019, Morris, who worked with Roach in his consulting capacity, resigned from Propel.  (Id. at ¶ 171, ECF No. 25.)  Plaintiffs allege Roach convinced Morris to resign as part of Roach's plan to "take down" Propel.  (Id. at ¶¶ 138-40, 146-54, ECF No. 25.)  Plaintiffs further allege that Morris refused to return her Propel HR-owned computer and that the information on her computer was accessed and used by the Defendants to send the eight mailings described below.  (Id. at ¶¶ 137, 146-54, 170-77, ECF No. 25.)  Plaintiffs also allege Roach's intention was to drive clients away from Propel, likely to competitors, including the

---

³ The Morris Agreement contains provisions prohibiting solicitation of Propel clients and employees for 12 months following termination of employment.  (Morris Agreement 3, ECF No. 25-17.)  The Agreement also includes confidentiality obligations which remain in effect for a period of 24 months following termination of employment.  (Id. at 2, ECF No. 25-17.)

3

company Morris allegedly began working for the day after her resignation from Propel HR.  (Id. at ¶ 80, ECF No. 25.)

Plaintiffs contend that between October 31, 2019, and December 2, 2019, Roach sent eight mailings to Propel HR clients and customers, Yarborough's neighbors, professional employer organization (PEO) industry associations for which Yarborough serves on boards, and trade associations.  (Am. Compl. ¶¶ 4, 98-133, ECF No. 25.)  Plaintiffs further allege that because Morris knew that Roach was planning to send these eight mailings, the Defendants had a "partnership" to damage Plaintiffs.  (Id. at ¶¶ 137, 140-54, 170-77, 186-89, ECF No. 25.)  The mailings, mostly postcards, contained the Propel HR name and trademark.  (Id. at ¶¶ 98-133, ECF No. 25.)  The mailings contained allegations of racism, workplace discrimination, illegal conduct, sexual harassment, and more.[4]  (Id. at ¶¶ 98-133, ECF No. 25.)  Six of the mailings

---

[4] The first mailing included copies of Morris and Arron Drye's, another former Propel HR employee, resignation letters, along with a document containing allegations of racism and workplace discrimination by Plaintiffs.  (First Mailing, ECF No. 25-5.)  The mailing was signed by "[a] concerned group of current and former employees of Propel HR."  (Id., ECF No. 25-5.)  The second mailing was a postcard with an image of Yarborough, her name, and the phrase, "Starring Lee Yarborough as Two Slice Hillee."  (Second Mailing, ECF No. 25-6.)  The other side of the postcard contained allegations that Plaintiffs were racist and treated their employees like servants.  (Id., ECF No. 25-6.)  The third mailing was a postcard with an image of a current employee of Propel HR, along with the Propel HR name and trademark and the statements: "Just think what The JERK could do with all your information and data!" and "Time to look for a NEW HR Company!"  (Third Mailing, ECF No. 25-7.)  The fourth mailing was a postcard with the Propel HR name and trademark and accused Propel of illegal conduct, including sexual harassment, and included the statement, "Time to look for a NEW HR Company!"  (Fourth Mailing, ECF No. 25-8.)  The fifth mailing was a postcard with the Propel HR name and trademark and the same accusations as the fourth mailing.  (Fifth Mailing, ECF No. 25-9.)  The sixth mailing also contained the Propel HR name and trademark and two images of a female dancer with two different men, one of which included the cropped image of the face of Yarborough's father, Braxton Cutchin.  (Sixth Mailing, ECF No. 25-10.)  The postcard stated, "A Christian woman-owned Company, Must value and respect all women?!?"  (Id., ECF No. 25-10.)  The seventh mailing contained images of five current staff members of Propel, including Yarborough, along with an image of the "Grim Reaper," and it also contained the

4

included the statement, "Time to look for a NEW HR Company!" (Id. at ¶¶ 121, ECF No. 25.) The eighth mailing included what appears to be an Employer Identification Number/Tax Identification Number (EIN/TIN), and the text, "Is your EIN (Employer Identification Number) SAFE?" (Am. Compl. ¶¶ 121, ECF No. 25, & Ex. 12 (Eighth Mailing), ECF No. 25-12.) Plaintiffs allege that the Defendants have illegally accessed and used Propel's confidential mailing list and client EIN/TINs in the mailings described above in violation of the Roach and Morris Agreements. (Id., generally, ECF No. 25.) Plaintiffs further allege that Yarborough lives in fear of Roach and continues to experience tremendous mental and emotional distress and substantial expenses because of his actions. (Id., generally, ECF No. 25.)

Plaintiffs filed a complaint on December 20, 2019. (Compl., ECF No. 1.) On February 18, 2020, Plaintiffs filed an amended complaint. (Am. Compl., ECF No. 25.) On March 3, 2020, Catapult filed an answer to the amended complaint. (Catapult Ans., ECF No. 37.) On the same day, Roach, proceeding pro se, filed a motion to strike and a motion to dismiss. (Roach Mot. Strike, ECF No. 38); (Roach Mot. Dismiss, ECF No. 39.) On March 16, 2020, Morris filed a motion to dismiss and an alternative motion for a more definite statement. (Morris Mot. Dismiss, ECF No. 43.) The parties filed responses and replies. On March 26, 2020, Roach filed a motion to strike certain exhibits from Plaintiffs' response to his motions, and Plaintiffs filed a response on April 9, 2020. (Roach Mot. Strike, ECF No. 59); (Pls. Resp., ECF No. 61.) On

---

Propel HR name and trademark. (Seventh Mailing, ECF No. 25-11.) The eighth mailing contained the Propel HR name and trademark, what appears to be an Employer Identification Number/ Tax Identification Number (EIN/TIN), and the text, "Is your EIN (Employer Identification Number) SAFE?" (Eight Mailing, ECF No. 25-12.)

5

June 24, 2020, Plaintiffs filed a motion to compel discovery responses from Roach. (Mot. Compel, ECF No. 85.)

On July 24, 2020, the magistrate judge issued a Report and Recommendation, recommending that the motions to dismiss of Roach and Morris (ECF Nos. 39 and 43) be granted in part and denied in part; Morris' alternative motion for a more definite statement (ECF No. 43) be denied; Roach's first motion to strike (ECF No. 38) be granted; and Roach's second motion to strike (ECF No. 59) be denied. (R&R, generally, ECF No. 95.) On July 30, 2020, the magistrate judge granted Plaintiffs' June 24, 2020 motion to compel. (Order, ECF No. 98.) The parties did not file objections to the Report and Recommendation. The court adopted the Report and Recommendation on August 11, 2020. (Order, ECF No. 100.)

On August 21, 2020, Morris filed an answer to the amended complaint. (Morris Ans., ECF No. 104.) On August 28, 2020, Attorney David E. Rothstein filed a notice of appearance of counsel for Roach along with an answer to the amended complaint and counterclaims. (Not. Appearance, ECF No. 106); (Roach Ans. & Countercls., ECF No. 107.) On September 1, 2020, the magistrate judge ordered Roach to serve his discovery responses on or before September 11, 2020. (Order, ECF No. 111.) On October 1, 2020, Plaintiffs filed a motion to dismiss Roach's counterclaims based on the failure to state a claim upon which relief may be granted. (Mot. Dismiss, ECF No. 125.) Roach filed a response on October 15, 2020. (Resp., ECF No. 129.) Plaintiffs did not file a reply. This matter is now ripe for review.[5]

---

[5] On November 9, 2020, Plaintiffs filed a motion to amend/correct their amended complaint based on discovery obtained from Roach. (Mot. Amend, ECF No. 138.) The court denied the motion in an order dated December 9, 2020. (Order, ECF No. 149.) Thus, the amended complaint, Roach's answer and counterclaims, and the instant motion are not moot.

## II. DISCUSSION OF THE LAW

### A. Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), "a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Id.

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Breach of Contract

Movants argue that Roach's counterclaim against Propel HR for breach of the Roach IC Agreement should be dismissed because it was a compulsory counterclaim of Catapult that Catapult failed to plead as a counterclaim. (Mot. Dismiss 3-4, ECF No. 125.) Movants argue that although Roach, individually, and Catapult are both parties to the Roach IC Agreement, it is Catapult who is "the real party in interest" to the Agreement. (Id. at 3, ECF No. 125.) Movants provide no legal support for their position. From the face of the Roach IC Agreement, Roach is a party to the contract. After review, the court denies Movants' motion to dismiss Roach's breach of contract counterclaim.[6]

### C. South Carolina Payment of Wages Act and Declaratory Judgment

Movants argue that Roach's counterclaims for violation of the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. § 41-10-10, *et seq.*, and for declaratory judgment should be dismissed because the express language of the Roach IC Agreement stating that Roach was an independent contractor and not an employee makes the SCPWA inapplicable to Roach. See Adamson v. Marianne Fabrics, Inc., 391 S.E.2d 249, 250 (S.C. 1990) (holding that the SCPWA does not apply to independent contractors). (Mot. Dismiss 6, ECF No. 125); (Am. Compl. Ex. 3 (Roach IC Agreement 2), ECF No. 25-3.) However, Roach has alleged that

---

[6] Movants move in the alternative for summary judgment or a judgment on the pleadings under Federal Rules of Civil Procedure Rules 56 and 12(c) because the Roach IC Agreement allows either party to terminate with 30 days notice. (Mot. Dismiss 4, ECF No. 125); (see Am. Compl. Ex. 3 (Roach IC Agreement 3), ECF No. 25-3.) In contrast, Roach disputes this argument and alleges that he was terminated by Propel "without cause and without notice" in violation of the Roach IC Agreement. (Roach Ans. & Countercls. ¶ 302, ECF No. 107.) At this stage in the litigation, the court declines to convert the motion into a motion for summary judgment or judgment on the pleadings.

Propel misclassified him as an "independent contractor" and that he was really an "employee" for purposes of the SCPWA "because Propel exercised sufficient control" over him. (Roach Ans. & Countercls. ¶ 319, ECF No. 107.) Based on these allegations, Roach's seeks a declaration that he was an employee and is entitled to payroll and benefit adjustments as a result. (Id. at ¶ 330, ECF No. 107.)

"Under South Carolina common law, the primary consideration in determining whether an employer-employee relationship exists is whether the purported employer has the right to control the servant in the performance of his work and the manner in which it is done." Kilgore Grp., Inc. v. S.C. Employment Sec. Comm'n, 437 S.E.2d 48, 49 (S.C. 1993) (citation omitted). Courts consider the following factors in determining the right to control: "(1) direct evidence of the right to, or exercise of, control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire." Id. at 49-50 (citation omitted). The contract as a whole is given considerable weight, but is not dispositive. Id. at 50 ("The primary test of its character is the intention of the parties, which is to be gathered from the whole scope of the language used.") (citation omitted).

"[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Roach has failed to allege a single fact in support of his conclusory statement that "Propel exercised sufficient control" over him such that he was an employee. (See Roach Ans. & Countercls. ¶ 319, ECF No. 107.) Further, Roach does not allege that Propel had any *right* to control Roach's performance or manner in which his work was done. See Kilgore, 437 S.E.2d at 49. Consequently, the court finds that Roach falls short of stating a claim that is plausible on its face

and grants Movants' motion to dismiss Roach's counterclaims for violation of the SCPWA and for declaratory judgment.

### D. Malicious Prosecution Counterclaim

Roach's counterclaim against Yarborough for malicious prosecution is based on a restraining order Yarborough obtained against Roach in the West Greenville Summary Court under the South Carolina Harassment and Stalking Statute, S.C. Code Ann. § 16-3-1700 *et seq*. (Roach Ans. & Countercls., generally, ECF No. 107.) The restraining order was vacated on appeal by a South Carolina Circuit Court judge in an order dated July 24, 2020.[7] (Id. at ¶¶ 5, 335, ECF No. 107.) In order to maintain an action for malicious prosecution, Roach must prove the following: "(1) the institution or continuation of original judicial proceedings; (2) by or at the [direction] of [Yarborough]; (3) termination of such proceedings in [Roach's] favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage." Huffman v. Sunshine Recycling, LLC, 826 S.E.2d 609, 614 (S.C. 2019) (internal quotation marks and citations omitted).

Movants argue that this claim should be dismissed or stayed because the July 24, 2020 order vacating the restraining order "is not a final judgment and is on appeal." (Mot. Dismiss 6, ECF No. 125.) Movants' argument is based on the notion that a case on appeal has not been "terminated." (See id., ECF No. 125.) In response, Roach argues that the July 24, 2020 order constitutes a termination of proceedings. (Resp. 8-9, ECF No. 129.) "[T]he element of favorable termination of proceedings [means] a termination reflective of the merits." Gecy v. Somerset Point at Lady's Island Homeowners Ass'n, Inc., 828 S.E.2d 73, 80 (S.C. Ct. App.

---

[7] See Greenville County Court of Common Pleas case number 2020-CP-23-1669.

2019). The court takes judicial notice of the July 24, 2020 order, which vacated the restraining order because Yarborough failed to establish harassment or stalking by Roach. See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'"). Thus, the restraining order was terminated on the merits and Roach has stated a plausible claim for malicious prosecution against Yarborough.

Therefore, the court denies Movants' motion to dismiss or stay Roach's malicious prosecution counterclaim.

### E. Abuse of Process Counterclaim

Roach's counterclaim against Yarborough for abuse of process is based on the same restraining order as the malicious prosecution counterclaim above. (Roach Ans. & Countercls., generally, ECF No. 107.) "The essential elements of abuse of process are (1) an ulterior purpose, and (2) a willful act in the use of the process that is not proper in the regular conduct of the proceeding." Pallares v. Seinar, 756 S.E.2d 128, 133 (S.C. 2014) (citations omitted). Movants argue that the claim should be dismissed because Roach has not "shown" an improper willful act under element two. (Mot Dismiss 7-8, ECF No. 125.) However, to survive a motion to dismiss, Roach does not have to prove the elements of malicious prosecution. See Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) ("A Rule 12(b)(6) motion to dismiss does not resolve contests surrounding facts [or] the merits of a claim . . . .") (citations and internal quotation marks omitted). Roach must only allege sufficient facts to state a claim for abuse of process that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Therefore, Movants' motion to dismiss Roach's abuse of process counterclaim is denied.

11

F. Defamation

Movants contend that Roach's counterclaims do not set forth all of the elements for a proper defamation claim. (Mot. Dismiss 8-10, ECF No. 125.) Under South Carolina law, "'[t]he elements of defamation include: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.'" McNeil v. S.C. Dep't of Corrs., 743 S.E.2d 843, 848 (S.C. Ct. App. 2013) (quoting Murray v. Holnam, Inc., 542 S.E.2d 743, 748 (S.C. Ct. App. 2001)).

> [D]efamation is classified as either actionable per se or not actionable per se. Slander, which is involved here, is actionable per se when the defendant's alleged defamatory statements charge the plaintiff with one of five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession. . . . If the statement is actionable per se, then the defendant is presumed to have acted with common law malice and the plaintiff is presumed to have suffered general damages. If the statement is not actionable per se, then the plaintiff must plead and prove both common law malice and special damages.[8]

Fountain v. First Reliance Bank, 730 S.E.2d 305, 309 (S.C. 2012) (internal citations and quotation marks omitted).

Movants argue that Roach has failed to allege publication outside of the company. (Mot. Dismiss 8-9, ECF No. 125.) Movants also contend that the alleged communications are

---

[8] "Defamatory communications take two forms: libel and slander. Slander is a spoken defamation while libel is a written defamation or one accomplished by actions or conduct." Erickson v. Jones St. Publishers, LLC, 629 S.E.2d 653, 664 (S.C. 2006) (citations omitted). In his counterclaims, Roach alleges eight spoken defamatory communications. (Roach Ans. & Countercls. ¶ 344, ECF No. 107.)

privileged and are not actionable per se. (Id. at 8-9, ECF No. 125.) However, Roach has alleged publication to "one or more third parties, including former co-workers of Defendant Roach, neighbors of Defendant Roach, and prospective employers of Defendant Roach." (Roach Ans. & Countercls. ¶ 344, ECF No. 107.) Further, several of the alleged defamatory statements involve Roach's business relationship with Propel and are actionable per se.[9] (See id. at ¶ 344, ECF No. 107.) To the extent Movants allege the publications were privileged, privilege is an affirmative defense in defamation actions that requires Movants to prove the publications were privileged and that the privilege was not abused. See Swinton Creek Nursery v. Edisto Farm Credit, ACA, 514 S.E.2d 126, 134 (S.C. 1999) (holding factual inquires regarding privilege are left to the jury).

Consequently, the court finds that Roach has stated a claim for defamation that is plausible on its face, and Movants' motion to dismiss is denied.

### G. Intentional Interference with Prospective Contractual Relations

Further, Movants contend that Roach's counterclaim against Propel and Cutchin for intentional interference with prospective contractual relations should be dismissed because Roach fails to plead sufficient potential contractual relations. (Mot. Dismiss 10-11, ECF No. 125.) In response, Roach submits that his counterclaim alleges all of the required elements. (Resp. 12, ECF No. 129.)

To state a cause of action for intentional interference with prospective contractual relations, a plaintiff must prove: "(1) the defendant intentionally interfered with the plaintiff's

---

[9] Regardless, Roach also alleges malice and special harm caused by the alleged publications. (See Roach Ans. & Countercls. ¶¶ 343-50, ECF No. 107.)

potential contractual relations; (2) for an improper purpose or by improper methods; (3) causing injury to the plaintiff." Crandall Corp. v. Navistar Int'l Transp. Corp., 395 S.E.2d 179, 180 (S.C. 1990) (citations omitted). "If a defendant acts for more than one purpose, his improper purpose must predominate in order to create liability." Id. "[A] cause of action for intentional interference with prospective contractual relations generally stands following the loss of an identifiable contract or expectation." United Educ. Distributors, LLC v. Educ. Testing Serv., 564 S.E.2d 324, 328 (S.C. Ct. App. 2002) (citations omitted). "The [contract] must be a close certainty; thus, a mere offer to sell, for example, does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship." Id. at 330. The contract cannot be speculative and "the mere hope of a contract is insufficient." Id.

To survive a motion to dismiss, Roach must have "alleged that [he] had a reasonable probability of entering into a specific contract [or business expectation] but for the interference of [Cutchin and Propel]." Id. at 330. Roach alleges that he interviewed with a nation-wide PEO firm and that the "interviews with the company went very well, and [he] was confident that he was going to receive a job offer." (Roach Ans. & Countercls. ¶¶ 353-54, ECF No. 107.) Roach alleges that after a second interview he was informed that the firm decided to "go in another direction." (Id. at ¶ 355, ECF No. 107.) Roach claims he was not hired because the firm spoke with Cutchin, a Propel employee, who threatened to sue the firm if it hired Roach. (Id. at ¶ 355, ECF No. 107.) After review, the court finds that the facts plead by Roach amount to only mere hope and speculation of entering into an employment contract with the PEO firm.

Therefore, Movants' motion to dismiss Roach's counterclaim for intentional interference with prospective contractual relations is granted.

## III. Conclusion

Based on the foregoing, Movants' motion to dismiss is granted for Roach's counterclaims for violation of the SCPWA, declaratory judgment, and intentional interference with prospective contractual relations and denied for Roach's counterclaims for breach of contract, malicious prosecution, abuse of process, and defamation.

It is therefore

**ORDERED** that Plaintiffs' motion to dismiss, docket number 125, is granted in part and denied in part.

**IT IS SO ORDERED**.

                                                s/Henry M. Herlong, Jr.
                                                Senior United States District Judge

Greenville, South Carolina
December 10, 2020